# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIDA ARIAS and JOSE J. MARTINEZ,**<br><br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JULIO AMADOR, *et al*.,**<br><br>**Defendants.** | **1:12-cv-00586 LJO SAB**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 31)** |

## I. <u>INTRODUCTION</u>

This case concerns the circumstances surrounding the April 15, 2010 arrest and detention of Plaintiffs Elida Arias and Jose J. Martinez by Ceres Police Department ("CPD") Officers. Plaintiffs advance five causes of action under 42 U.S.C. § 1983, some of which incorporate multiple legal theories. Before the Court for Decision is a Motion for Summary Judgment ("MSJ") brought on behalf of Defendants City of Ceres (the "City") and CPD Officers ("Officers") on all claims. Doc. 31. Subsequent to the filing of the MSJ, Parties stipulated to the dismissal of Defendants City of Ceres and Chief of Police Art De Werk. Doc. No. 36. Plaintiff opposes summary judgment. Doc. 35. Defendants replied. Doc. 38. The motion was set for hearing November 5, 2014, but the hearing was vacated and the matter submitted for decision on the papers pursuant to Local Rule 230(g). Doc. 49.

## II. <u>PROCEDURAL HISTORY</u>

Plaintiffs filed their Complaint on April 13, 2012, alleging constitutional violations pursuant to 42 U.S.C. §1983. Doc. 1. Plaintiffs allege: (1) CPD officers conducted unlawful searches and seizures of Plaintiffs and used excessive force, (2) CPD officers failed to intercede or prevent constitutional deprivations, (3) CPD officers conspired to violate Plaintiffs' civil rights, and (4) that CPD officers

failed to provide medical attention to Plaintiffs. Defendants move for summary judgment on the basis that there are no genuine issues as to facts that would establish that the Officers are liable for alleged civil rights violations. Doc. 31 at 2; Defs.' Mem. of Points and Auth. In Supp. of Mot. For Summ. J. (hereinafter "Defs.' Mem."), Doc. 32, at 4.

## III. FACTUAL BACKGROUND[2]

On April 15, 2010 Plaintiffs went to the Walmart Store located on Mitchell Road in Ceres, California. Defs.' Reply to Pls.' Response to Separate Statement of Undisputed Material Facts, Doc. No 48 (hereinafter "DSUF") #1. The parties dispute the events that followed.

### A. Events Surrounding Martinez's Arrest

Defendants submit that Plaintiff Martinez was involved in "multiple altercations with customers and Walmart staff" while attempting to return a video game console. Deposition of Walmart manager Pardeep Saini (hereinafter "Saini Depo."), Defs.' Ex. E, at 6-7. Martinez insists he was involved in a single altercation with an inebriated customer. Declaration of Jose Martinez (hereinafter "Martinez Decl."), Pls.' Ex 2 at ¶¶ 4-5.

According to Saini, he and another manager, Marcus Lacy, escorted Martinez from the store to the parking lot alongside security personnel. Saini Depo. at 9-10. Martinez claims he was escorted by security personnel only to the front of the store, and that he bumped into another customer accidentally on his way out. Martinez Decl. at ¶ 3.

According to Defendants' version of events, once Martinez reached the parking lot, he began screaming profanities and racial slurs at Wal-Mart employees, including Saini and Lacy. Saini Depo. at 11-14. Then, Martinez threatened Saini and Lacy and indicated that he had a knife. *Id.* at 11. Martinez denies threatening the employees, but admits using a racial slur toward them after one of the employees called him a "dirty white boy." Deposition of Jose Martinez (hereinafter "Martinez Depo."), Defs.' Ex.

---

[1] A fifth cause of action was asserted only against Defendants City of Ceres and Chief of Police Art De Werk; these defendants are no longer parties to this case. Compl. at ¶ 50; Doc. 36.

[2] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movants favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

C at 24–25; Martinez Decl. at ¶ 4.

The Parties agree that a Wal-Mart employee asked Martinez to leave the premise and notified Martinez that Wal-Mart would be calling the police. DSUF # 3, 6. The Parties also agree that CPD Officer Jason Coley was dispatched to the scene where he interviewed Martinez and Wal-Mart employees. DSUF #7.

Martinez admits that while Coley was interviewing the Wal-Mart employees, he interrupted "to correct" their accounts. Martinez Decl. at ¶ 11. Martinez alleges that Coley then told Martinez, "Shut the fuck up, you already had your turn," and then continued his interviews. *Id.* Martinez acknowledges interrupting the interview again when one of the employees told Coley that Martinez had started the fight with the customer. *Id.* at ¶12. ("I then exclaimed to the Wal-Mart Security persons, "Fuck you.").

At this point, Martinez claims that Coley first "unreasonably and unlawfully" ordered him to lie face down on hot asphalt, but then changed his instruction to ask that he sit on the curb. *Id.* at ¶12. Martinez states that he complied with the latter instruction. *Id.* Coley placed Martinez into custody in his patrol vehicle without physical struggle and partially lowered the window nearest him. Martinez Depo. at 34; Martinez Decl. at ¶¶ 12, 14. Martinez maintains that the other windows were fully rolled up and that it became excessively hot in the car. Martinez Decl. at ¶ 14. Martinez states that because of the heat "his fingers were going numb, tears where [*sic.*] streaming from my bottom eyelids, and I was having difficulty breathing." *Id.* at ¶ 15.

At Martinez's request, one of the officers called for an ambulance. Martinez Depo. at 36. According to Coley's police report, the ambulance crew examined Martinez, concluded "he was okay" and that Martinez himself expressed that he "felt fine." Ex. H at 3. Martinez claims that the ambulance crew diagnosed him as suffering from an anxiety attack and heat stress, and that they advised him that his handcuffs were too tight. Martinez Decl. at ¶ 20. According to Martinez, the ambulance crew advised Coley to roll more windows down, so that Martinez would be "more comfortable," but Coley refused. *Id.* Approximately 14 minutes elapsed between when Martinez was first placed in the patrol car and when he was examined by paramedics. *Id.* at ¶¶ 13, 20.

Coley transported Martinez to jail. Martinez claims that while in transit to the jail Coley, "took a route opposite the most direct route to jail," "drove fast and applied his brakes several times and repeatedly accelerated several times causing me to be forced into the wire mesh screen between the rear seats." *Id.* at ¶ 21. He claims that he was not seat-belted. *Id.* at ¶ 12. Martinez explains that this "caused the handcuffs to tighten progressively tighter during the ride." *Id.* at ¶ 21. Defendants do not contradict Martinez' allegations describing how he was transported. Defs.' Mem. at 10. Martinez claims that the Stanislaus County district attorney's office informed him that no charges would be filed against him in connection with these events. Martinez Decl. at ¶ 24.

**B.**     <u>Events Surrounding Arias's Arrest</u>

At some point, Plaintiff Arias exited the store and approached Wal-Mart personnel and CPD officers standing next to Arias's vehicle. DSUF #17. The police inquired as to her relationship with Martinez and asked for her identification. DSUF #19. One of the officers informed her that Martinez was under arrest. Deposition of Elida Arias (hereinafter "Arias Depo."), Defs.' Ex. B at 122. Defendants claim that CPD Officers Julio Amador and Pat Dayton ordered Arias "at least five times" to refrain from approaching the police vehicle where Martinez was being held. Deposition of Wal-Mart employee Marcus Lacey (hereinafter "Lacey Depo."), Defs.' Ex. D at 15, 36. Arias claims that no warning was issued until after she approached the vehicle. Arias Depo. at 24, 27. At that point, she claims that Amador shouted at her to "stay away from the car." *Id.* at 24. According to Arias, she was so startled by the order that she jumped back and exclaimed, "What bitch?" *Id.* at 24-25. Arias testified that this all occurred very quickly, during which time she was listening to Martinez yell for an ambulance and scream obscenities. Arias Decl. at ¶ 9. According to Arias, she was not given time to comply with Arias's orders to move before one of the officers grabbed her left arm and threw her against the car. Arias Depo. at 28. The officers ordered her to drop her cellular phone, but she initially refused, asking them to take it from her. *Id.* at 29. Arias claims that at that point they began kicking her and were "throwing [her] back and forth." *Id.* at 29-30. The security camera video evidence shows that these events took place between 2:54:07 and 2:56:00; a period of less than two minutes. Pls.' Ex. 1 at 2:54:07.

Officer Dayton placed Arias in the back of a police vehicle, which she claimed was hot. Arias Depo. at 60; Arias Decl. at ¶ 20. She claims that Dayton sat in the front seat, and that she told him "You suck as an officer." Arias Depo. at 61; Arias Decl. at ¶ 20. At this point, Arias claims Dayton came around to the back of the patrol car and whispered a vulgar statement to her. Arias Depo. at 61; Arias Decl. at ¶ 20. Officer Debra Borges then removed Arias from the vehicle and searched her. Arias Decl. at ¶ 21. Arias claims that she asked Borges to call an ambulance. *Id.* Borges did not respond, but placed Arias back in the patrol vehicle. *Id.* Arias also asked Borges to roll the windows down in the patrol vehicle, and used her foot to prevent the patrol car door from shutting. *Id.* Borges informed her that she would not roll the windows down because she was afraid that Arias would start screaming. *Id.*; Arias Depo. at 64. Arias then asked to speak with a second officer, and Perez came over. Arias Depo. at 97. She restated her request for the windows to be rolled down; and Borges complied by rolling down the window, "two, three inches." *Id.*

Officer Amador drove Arias to jail. Arias Decl. at 71. En route to the jail, Arias asked Officer Amador to loosen her handcuffs, but he refused. Arias Depo. at ¶23; Arias Decl. at 65. Once they arrived at the jail, she asked Amador to remove her handcuffs because her wrists were swollen. Arias Decl. at ¶24. After about "four or five minutes," they were removed as part of the booking process. Arias Depo. at 77-78. Upon her release from jail, Arias visited the emergency room. Arias Decl. at ¶27. As evidence of the extent of her injuries, Arias submitted a radiologist's note that she had a "very slight left convex scoliosis of the lumbar spine which may be due to muscle spasm." Pls.' Ex. 7. A few weeks after the incident, Arias visited a neuropsychologist to help her deal with the stress related to the arrest. Arias Decl. at ¶ 29.

## IV. **STANDARD OF DECISION**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  A fact is material

if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or

"unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).

If the moving party would bear the burden of proof on an issue at trial, that party must

"affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving

party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that

there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party

meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material

facts by either:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the motion
> only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, a court does not make credibility determinations or

weigh evidence.  *See Anderson*, 477 U.S. at 255.  Rather, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may

be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory,

speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

defeat summary judgment." *Soremekun*, 509 F.3d at 984.

**V.    ANALYSIS**

**A.    Whether the Court Should Consider Plaintiffs' Declarations**

Defendants argue that facts advanced by Plaintiffs in their declarations are contradicted by their prior sworn testimony and are therefore "sham" statements that this Court must disregard. Reply at 2-3. In the Ninth Circuit, fabricated testimony that "flatly contradicts earlier testimony in an attempt to create an issue of fact and avoid summary judgment" may be disregarded and be subject of sanctions. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991). This doctrine requires the district court to "make a factual determination that the contradiction was actually a sham." *Id.* However, at the summary judgment stage, a defendant's sworn statements cannot be disbelieved "simply because his statements are in his interest and in conflict with other evidence." *United States v. Arango*, 670 F.3d 988, 994 (9th Cir. 2012). Moreover, "a non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony" and that "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). Defendants allege that there are three instances where Plaintiffs fabricated testimony.

**1.    Whether Martinez Recalls Wearing a Seatbelt**

Defendants claim that Martinez testified in his deposition that he was seat-belted in the patrol vehicle during his transport to jail; but testified in his declaration that Coley did not seatbelt him. Reply at 2. During his deposition, when Martinez was asked whether he was wearing a seat belt while he was being transported to jail, he initially responded "yes." Martinez Depo. at 52. When pressed as to who had put the seatbelt on him, he replied that "Coley might have done it, and I don't remember wearing a seat belt. I am just assuming I had a seat belt, but I might not have had a seat belt. I don't really remember." *Id.* In his Declaration, Martinez stated that during the drive to the jail, Coley "did not put a seatbelt on him." Martinez Decl. at ¶ 12. Here, Plaintiff's testimony shows that he could not clearly remember whether he was wearing a seatbelt when he testified at his deposition, and that he had assumed he was wearing one. Assuming the truth of both statements, his later testimony stating he was

not wearing a seatbelt could be justified by a desire to elaborate on or explain his earlier, uncertain

testimony. Therefore, there is insufficient evidence for this Court to find that Plaintiff's statement on this

matter is sham.

### 2. Whether Arias Was Told Martinez Was Under Arrest

Defendants argue that Arias acknowledged being advised by officers that Martinez was under

arrest in her deposition but denied it in her declaration. Reply at 3. Defendants cite to at least two places

in Arias' deposition where Arias describes being told by the officers that her husband was under arrest

soon after she arrived at the scene. *See* Arias Depo. at 124-25. Defendants, however, do not identify

where Arias denies being told Martinez was under arrest in her declaration. In fact, the declaration

appears to be silent on this issue. Thus, there is no basis for Defendants' argument that her declaration is

a sham.

### 3. How Many Officers Martinez Spoke With

Defendants state that Martinez's deposition testimony describes that he "might have" spoken

with Amador in addition to Coley while he was arrested and that Martinez did not know which officer

called the ambulance. Reply at two, fn. 1. They claim that Martinez contradicted this testimony in his

deposition when he claimed that he asked a third officer to roll down his window and for an ambulance.

*Id.* Defendants do not provide citations for these remarks. However, in Martinez's deposition, he clearly

states that he does not remember which officer called the ambulance. Martinez. Decl. at 36.

Additionally, when initially asked whether he spoke with officers other than Coley he replied, "I don't

remember specifically." *Id.* at 39. After describing a brief interaction with Officer Amador, he stated,

"Other than that, I don't remember talking to any other cops." *Id.* In his declaration, he states that an

unidentified officer told him that an ambulance had been called for him. Martinez Decl. at ¶ 17.

Martinez's later testimony that an unknown officer informed him that an ambulance had been called is

not necessarily inconsistent with his deposition testimony. Even if this officer was not Amador, it is

plausible that Martinez simply did not recall this brief interaction during his deposition. Whatever minor

inconsistency this may present compared with his previous deposition does not warrant throwing out the

testimony out as sham.

**B.**    **Unlawful Arrest Claims**

    **1.**    **Legal Background**

        **a.**    **Unlawful Arrest and Qualified Immunity**

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Liability for damages under § 1983 only arises upon a showing of personal participation by the defendant. *Starr v. Baca*, 652 F.3d 1202, 1221 (9th Cir. 2011) (internal citation and quotation omitted). Each Defendant's conduct must be independently evaluated.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified immunity applies regardless of whether the government official makes an error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law . . ." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted).

The qualified immunity inquiry has two prongs: (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 129). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *Id.* at 201, 205. "The principles of qualified immunity shield an officer from personal liability

when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 245. Where there is a dispute in the underlying evidence, qualified immunity cannot be granted. *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.").

It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir.1988). An officer who makes an arrest without probable cause, however, may still be entitled to qualified immunity if he reasonably *believed* there to have been probable cause. *See Ramirez v. City of Buena Park,* 560 F.3d 1012, 1024 (9th Cir. 2009).

"In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) "Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Id.* at 1078.

Critically, however, the Court must not lose sight of the summary judgment standard. If facts material to resolving Fourth Amendment "reasonableness" and/or any of the related qualified immunity inquiries are disputed, those facts must be viewed in the light most favorable to the non-moving party. *See Wilkins*, 350 F.3d at 951.

**b.    Cal. Penal Code Section 148**

Both Plaintiffs were taken into custody for resisting, delaying, or obstructing a peace officer in violation of California Penal Code § 148(a)(1). Compl. ¶ 24, DSUF # 11, 27. The lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer. *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (internal citations omitted). Under

California law, the rule that someone verbally challenges a police officer's authority or is slow to comply with orders does not mean that they have delayed an investigation. *People v. Quiroga*, 16 Cal. App. 4th 961, 966 (1993) (holding that the Penal Code does not "criminalize[ ] a person's failure to respond with alacrity to police orders."). "Vulgar, profane or highly inappropriate words alone do not support a finding that the speech was criminal." *In re Juan A*., 230 Cal. App. 4th 1006 (2014).[3] Ninth Circuit law also clearly establishes the right to verbally challenge the police. *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995) (citing *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)) (affirming that "a police officer did not have probable cause to stop an individual for the obscene gestures and words he directed from his car towards the police officer and that the officer was not entitled to qualified immunity" because "criticism of the police is not a crime.").

However, when a person's words go "beyond verbal criticism, into the realm of interference with [an officer's performance of his or her] duty," the First Amendment does not preclude criminal punishment. *People v. Lacefield*, 157 Cal. App. 4th 249, 261 (disapproved on unrelated grounds); *see also People v. Green*, 51 Cal. App. 4th 1433, 1438 (1997) (defendant's attempts to intimidate the suspected victim into denying the commission of the offense impeded the officer's investigation and thus were not protected by the First Amendment). For example, in *Young v. County of Los Angeles,* the Ninth Circuit found that a police officer had probable cause to arrest a person who refused to comply with an order to re-enter his vehicle during a traffic stop. 655 F.3d 1156, 1170 (9th Cir. 2011) ("Because [the officer]'s order that [plaintiff] reenter his vehicle was lawful and [plaintiff's] refusal to obey was not an act of speech protected by the First Amendment, [the officer] had the authority to arrest [plaintiff] for disobeying a peace officer's order in violation of § 148(a)(1)."). The Ninth Circuit distinguished the situation in *Young* from the one in *Quiroga* on the basis that *Quiroga* does not apply to a situation where an individual fails to comply with a police command altogether. *Id.* (refusing to move back pursuant to

---

[3] While the holding in *In re Juan* concerned Cal. Penal Code § 415, it is relevant here because First Amendment protections regarding vulgar language apply similarly to alleged violations of Cal. Penal Code § 148.

an order of a peace officer is a violation of Penal Code section 148(a)(1). Similarly, in *In re Muhammed C*., 95 Cal. App. 4th 1325, 1330 (2002), police officers arrested a juvenile's associate on drug charges and placed him in the back of a squad car. The back window of the squad car was partially down, and the juvenile "approached the back of the patrol car and spoke to [his associate]." *Id.* One of the officers ordered the defendant to move away, and then the other officer did as well. At that point, the juvenile raised his hand toward the officers. *Id.* The officers then ordered him to get away from the car again. *Id.* Finally, they arrested him. *Id.* A California appellate court affirmed the conviction because "a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car. . ." *Id.* at 1330. Similarly, the Central District of California found that police had probable cause to arrest a plaintiff who approached an arrestee and refused to "get back" after the police issued at least three warnings. *Veth Mam v. City of Fullerton*, No. 8:11-CV-1242-JST, 2013 WL 951401, at *4 (C.D. Cal. Mar. 12, 2013).

**2.    Discussion**

**a.    Whether There Was Probable Cause to Arrest Martinez**

Officer Coley asserts that he was justified in taking Martinez into custody because Martinez repeatedly interrupted Coley's interview with a Wal-Mart employee at the scene, "became angry," used profanity, and did not follow Coley's orders. Defs.' Mem. at 2, 6.

Reading the facts in a light most favorable to Martinez, this Court finds that a reasonable officer could have believed that probable cause existed to arrest Martinez under Section 148(a)(1). While Martinez's use of vulgar language was not a valid reason to arrest him, *Mackinney*. 69 F.3d at 1007, an officer could reasonably have believed that Martinez's refusal to follow orders delayed or obstructed Coley's investigation. Plaintiffs do not dispute that Coley was engaged in the "lawful exercise of his duties" when he was interviewing the Wal-Mart employees. Martinez admits that he interrupted the interviews, even after being ordered not to. Martinez Deposition at 29; Martinez Dec. at ¶¶ 11-12. This refusal to obey was sufficient to give Coley probable cause to arrest Martinez under Section 148(a)(1). *Young*, 655 F.3d at 1159 n.3.

Even if Coley's arrest of Martinez lacked probable cause, Coley would be entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). In this case, the second prong calls for the Court to determine "whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Franklin v. Fox*, 312 F.3d at 437. In light of Coley's attempt to maintain order and interview other witnesses at the scene, and the undisputed fact that Martinez did not comply with Coley's order not to interfere with these interviews, a reasonable officer could have believed probable cause existed to arrest Martinez.

**b. Whether There Was Probable Cause to Arrest Arias**

Defendants claim they were justified in taking Arias into custody because she refused to comply with orders to stay away from the vehicle where Martinez was being held, and resisted when officers tried to physically remove her from next to the vehicle. Defs.' Mem. at 6.

In moving for summary judgment, Defendants claim that Arias failed to comply with "at least five commands by multiple police officers not to approach a patrol vehicle." Defs.' Mem. at 6. Plaintiff, on the other hand, maintains that police did not warn her not to approach. Arias Decl. ¶ 11. Rather, she claims that the officers only yelled at her once she was at the side of the vehicle, that she responded reflexively, and then was immediately apprehended. *Id.* at ¶¶ 12-14.

Assuming the truth of Arias's version of the events, a reasonable juror could conclude that the officers did not command her to stay away from the vehicle until she was already beside it. Thus, she did not have the opportunity to comply or refuse to comply with their orders. From this perspective, the only reason police would have had to detain her was her actual approach to the vehicle. This behavior alone does not violate Section 148. *In re Muhammed C.*, 95 Cal. App. 4th at 1330.

Defendants maintain that officers involved in this arrest are entitled to qualified immunity because "they reasonably believed their conduct was lawful" and there "is no evidence they knowingly violated the law." Defs.' Mem. at 7. Whether the officers themselves believed their conduct was lawful

1  is not dispositive as to whether immunity applies as to Plaintiff's constitutional claims. As discussed

2  above, determining whether an official is entitled to qualified immunity involves a two-part analysis.

3  Here, the Court has already determined that a reasonable juror could find that the officers violated Arias'

4  Fourth Amendment rights to be free from unlawful arrest. Thus, the only inquiry remaining is whether

5  the Fourth Amendment right at issue was clearly established at the time of the violation. More

6  specifically, if all reasonable officers would agree that a person's mere approach to a police car where

7  someone is held in custody is insufficient grounds for arrest under Section 148, then the officers are not

8  shielded by qualified immunity. *See Rosenbaum.,* 663 F.3d at 1078.

9      Neither side addressed this issue in their briefings. However, it appears to be well-settled that

10  Section 148 requires that an accused must engage in an affirmative act to disobey or resist an officer.

11  *Young,* 655 F.3d at 1170. As described in Section V(B)(1)(b), *supra,* courts that have considered the

12  issue have required that an accused disobey a direct order to comply with an officer's command. *In re*

13  *Muhammed C.,* 95 Cal. App. 4th at 1330. Defendants themselves demonstrate their awareness of this

14  standard with their arguments that Arias' refusal to cooperate was the reason for her arrest. Defs.' Mem.

15  at 6; Reply at 8 ("Plaintiff was arrested because she failed to comply with the lawful directives of the

16  police not to approach a person in custody in their police car, not because of her use of obscenities.").

17  Therefore, it was clearly established that Plaintiff Arias could not be arrested pursuant to Section 148 for

18  failure to obey a lawful directive without first having an opportunity to respond to a lawful command.

19  Accordingly, the officers involved in Arias' arrest are not entitled to qualified immunity on her unlawful

20  seizure claims.

21  **C.    Excessive Force Claim**

22      **1.    Legal Background**

23      Claims against law enforcement officers for the use of excessive force during an arrest are

24  analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490

25  U.S. 386, 388 (1989); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). The relevant

26  question is "whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to [the officers'] intent or motivation." *Graham*, 490 U.S. at 397. In making this determination, the trier of fact must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). In other words, "the type and amount of force inflicted" must be evaluated and weighed against such factors as "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing *Graham*, 490 U.S. at 396). *See Jackson*, 268 F.3d at 651–52.

If a court determines that the alleged conduct violates a clearly established constitutional right, the second step "is to inquire whether the officer was reasonable in his belief that his conduct did not violate the Constitution." *Wilkins*, 350 F.3d at 954-55. "This step, in contrast to the first, is an inquiry into the reasonableness of the officer's belief in the legality of his actions." *Id.* at 955. "Even if his actions did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity." *Id.*

The Fourteenth Amendment prohibits punishment of pretrial detainees." *Demery v. Arpaio*, 378 F.3d 1020, 1023 (9th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). Conduct not reasonably related to legitimate penological objectives constitutes impermissible punishment. See *id.* at 1028–29; see also *Bell*, 441 U.S. at 538. "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery*, 378 F.3d at 1010.

### 2.   Whether Officers May Have Used Excessive Force Against Martinez

Defendants move for summary judgment on Martinez's excessive force claim, arguing that only minimal force was used to effect his arrest. Defs.' Mem. at 10. Martinez alleges the following bases for his excessive force claim: that tight handcuffs and excessive heat caused Martinez to suffer while he was awaiting transport to jail; and that while en route to jail, Coley drove erratically, and caused Martinez to

thrash about the back seat of the car. Opposition at 9. Defendants do not contradict Martinez's

allegations describing how he was transported, but maintain that all force used was "objectively

reasonable." Defs.' Mem. at 10.

a.    **Heated Conditions in Back of Police Car**

Defendants move for summary judgment on the issue of whether Martinez was exposed to heat

while confined in patrol vehicles in a manner that violated the Fourth Amendment. Defs.' Mem. at 14.

While the Ninth Circuit has not squarely addressed the issue of a post-arrest detention in a hot,

unventilated police vehicle, it appears that this conduct can constitute excessive force under the Fourth

Amendment. *See Kanvick v. City of Reno*, No. 3:06-CV-00058-RAM, 2008 WL 873085, at *11-12 (D.

Nev. Mar. 27, 2008) *aff'd sub nom. Kanvick v. Reno City Police*, 339 F. App'x 745 (9th Cir. 2009). For

example, the Supreme Court held in *Hope v. Pelzer* that prison officials violated the Eighth Amendment

by exposing a prisoner to the sun for seven hours while handcuffed to a hitching post, subjecting the

prisoner to thirst, taunting, and deprivation of bathroom breaks. 536 U.S. 730, 738 (2002). Then,

applying *Hope*, the Sixth Circuit found that a post-arrest detention in a police vehicle "with the windows

rolled up in ninety degree heat for three hours constituted excessive force" under the Fourth

Amendment. *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002). The Fifth Circuit, on the other hand,

found a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun

was not in violation of the Fourth Amendment. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.

2001). In addition, a district court in New York found no Fourth Amendment violation where a suspect

was left in police vehicle for ten minutes in a hot car but suffered no injuries. *Esmont v. City of New

York*, 371 F. Supp. 2d 202, 214 (S.D.N.Y.2005). Similarly, the Nevada District Court granted summary

judgment to police officer defendants where a plaintiff was left in the car for 17 minutes, offered no

evidence that he was injured, and that he was only left waiting as long as was needed for officers to

change shifts. *Kanvick,* 2008 WL 873085, at *11-12. In sum, in cases where confinement in a vehicle

amounted to excessive force, the exposure has been prolonged (i.e. three hours in *Burchett*, 310 F.3d at

945). In contrast, federal district courts have found that force was not excessive when the confinement

lasted thirty minutes or less. *Glenn*, 242 F.3d at 914; *Edmonds*, 371 F.Supp. 2d at 214; *Rummick*, 2008 WL 873085, at *11-12.

Defendants argue that Arias offered testimony that it was only 70 degrees that day, and that a non-party witness perceived it to be in the 60's. Arias Depo. at 146; Lacey Depo. at 36. Plaintiffs argue that conditions in the car were much hotter than the ambient temperature. Opposition at 3. As evidence, they cite to their own experiences of feeling overheated, a website that estimates temperature conditions in cars, Ex. 10, and a study on heat stress in enclosed vehicles, Ex. 11. More specifically, Martinez maintains that while he was confined in the back of the police car, it was "very hot" and that he "began to sweat profusely from under the bottom of my eyelids." Martinez Decl. at ¶ 14. The window next to him was rolled down "about 4 inches." *Id.* Martinez told one of the officers that he felt like he was having a stroke and requested an ambulance. *Id.* Less than 15 minutes later, an ambulance arrived. *Id.* at ¶ 20. According to Martinez, a paramedic examined him and found that he was suffering from an "anxiety attack and heat stress." *Id.*

Even assuming the truth of Martinez's assertion that it was "very hot" in the car, it is undisputed that he was in the car for less than fifteen minutes. It cannot be said that such a short period of exposure is an "objectively unreasonable" example of excessive force. *Wilkins*, 350 F.3d at 954. Moreover, Martinez does not state that he asked officers to roll down the windows or even informed them of the heat-related nature of his suffering. Rather, he told officers that he thought he was having a stroke and that he wanted medical attention. Martinez Decl. at ¶ 15. Thus, even viewing the facts in a light most favorable to the Plaintiff, an officer could have reasonably believed that Martinez's confinement did not violate the Constitution. *Wilkins*, 350 F.3d at 954-55.

Defendants are entitled to summary judgment as to Martinez's allegation that he was confined to a hot patrol vehicle in a manner that violated his Fourth Amendment right.

### b.   **Tight Handcuffs**

Martinez describes that while he initially confined in the back of the police car, tight handcuffs caused his fingers to go numb and tingle. Martinez Decl. at ¶ 15; Martinez Depo. at 36. According to

Martinez, the paramedic who examined him, found that his handcuffs were too tight and suggested to Officer Coley that the he loosen Martinez's handcuffs. Martinez Decl. at ¶ 20. Coley, however, did not loosen the handcuffs. *Id.* Martinez further describes that Coley did not lock the handcuffs to prevent them from tightening. *Id.* at 21. Thus, when Coley drove him to jail, his erratic driving and application of the brakes "caused the handcuffs to tighten progressively." *Id.*

The Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored. *See Dillman v. Tuolumne Cnty.,* No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013). However, in *LaLonde v. County of Riverside*, 204 F.3d 947, 952 (9th Cir.2000), the Ninth Circuit observed that "[t]he issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *Id.* Thus, summary judgment is generally not appropriate. *Id.* Even so, one court awarded summary judgment to defendants as to the issue of tight handcuffs where a detainee "did not repeatedly request to have the handcuffs removed or loosened, was not in any demonstrable pain, did not complain of pain or inform [the officer] of any pre-existing injuries, and was not pushed or shoved." *Shaw v. City of Redondo Beach*, No. CV05-0481SVWFMOX, 2005 WL 6117549, at *9 (C.D. Cal. Aug. 23, 2005). Another found no triable issue of fact when detainee's "only complaint is that his handcuffs were too tight, which left a slight abrasion on his wrists." *Luong v. City & Cnty. of San Francisco*, No. C11-5661 MEJ, 2012 WL 5869561, at *5 (N.D. Cal. Nov. 19, 2012) (finding that Plaintiff's "only evidence to support his excessive force claim is his testimony that the handcuffs were too tight and caused him a slight abrasion" was "vague testimony" and "not enough to withstand summary judgment.").

Viewing the facts in Martinez's favor, this Court cannot find Coley's conduct was "objectively reasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397. Coley ignored Martinez's request (and a paramedic's suggestion) to loosen Martinez's handcuffs. Martinez Decl. at ¶ 20. He also failed to secure them to prevent them from tightening during the drive to jail. *Id.* at 21. Finally, he drove in such a way as to cause the handcuffs to actually become tighter. *Id.* Coley has

1     presented no evidence that would justify handcuffing Martinez so tightly that he suffered pain, or to

2     justify his refusal to loosen the handcuffs after Martinez complained of the pain. Under these

3     circumstances, no reasonable officer could believe that the abusive application of handcuffs was

4     constitutional. *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). Thus, Defendants are not

5     entitled to summary judgment on this issue.

6             **c.**     **Erratic Driving**

7         Martinez claims that when Coley drove him to jail, he "drove fast and applied his brakes several

8     time and repeatedly accelerated several times causing me to be forced into the wire mesh screen between

9     the rear seats." Martinez Decl. at ¶ 2.

10        Defendants claim that Martinez's failure to allege injuries fatally undermines his claims. Defs.'

11    Mem. at 14. The Ninth Circuit has found police officers liable for claims of excessive force where no

12    injuries are claimed. *See, e.g. Tekle v. United States*, 511 F.3d 839, 846 (9th Cir. 2007) (excessive force

13    found where officers kept an eleven year old child handcuffed and pointed there weapons at him, "even

14    after it was apparent that he was a child and was not resisting them or attempting to flee."); *see also*

15    *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) ("Gratuitous and completely unnecessary acts of

16    violence by the police during a seizure violate the Fourth Amendment."). In facts similar to the ones

17    alleged here, the Sixth Circuit found that "if the defendants drove recklessly with the plaintiff

18    handcuffed in the back seat so as to cause him further pain and injury, this, by itself, is enough to state a

19    claim upon which a reasonable factfinder could conclude that the officers used excessive force."

20    *Kostrzewa v. City of Troy*, 247 F.3d 633, 640 (6th Cir. 2001). Thus, the fact that Arias does not

21    document serious injury is not fatal to his claim.

22        Defendants also maintain that they are entitled to summary judgment because "Plaintiff has

23    offered no evidence to support this claim except for his sham declaration." Defs.' Mem. at 9. As

24    discussed above, Defendants have not provided evidence that would support a finding that Martinez's

25    testimony is a sham. Thus, his testimony must be credited in the context of resolving Defendants'

26    motion. In the face of this evidence, Defendants fail to provide any explanation as to how Coley's erratic

1   driving was related to a legitimate government interest. In the absence of any such explanation, Coley's

2   conduct amounts to impermissible punishment. *Demery*, 378 F.3d at 1023. To the extent that Coley may

3   have believed this behavior was constitutional, this position is unreasonable in light of the Ninth

4   Circuit's clear holding that "completely unnecessary acts of violence by the police during a seizure"

5   violate the Fourteenth Amendment. *Fontana*, 262 F.3d at 880.

6      Thus, this Court DENIES Defendants' Motion for Summary Judgment as to Plaintiff's Excessive

7   Force Claim.

8      **3.     Whether Officers May Have Used Excessive Force Against Arias**

9      Defendants argue that they are entitled to summary judgment as to Arias's excessive force

10   claim, stating that only "minimal force was used." Defs.' Mem. at 10. According to Defendants, Arias

11   was simply "physically restrained and handcuffed." Arias asserts, however, that officers kicked her and

12   were "throwing [her] back and forth." *Id.* at 29-30. Defendants present testimonial evidence that Arias

13   struggled when police apprehended her, but that officers did not knee her or slam her against the truck.

14   Deposition of Wal-Mart employee Nathan Sharp (hereinafter "Sharp Depo."), Defs.' Ex. F, at 44-45.

15   Arias also asserts that she was exposed to excessive heat while confined in the patrol vehicle. *See*

16   Opposition at 3.

17      **a.     Physical Violence.**

18      As to her allegation that she was kicked and otherwise roughed up by the officers, viewing the

19   facts in a light most favorable to Arias and applying them to the excessive force factors, a reasonable

20   juror could easily find that the force used to arrest Arias was excessive. *See Chew*, 27 F.3d at 1440.

21   First, Arias was arrested for a relatively minor offense. Second, officers did not allege that she posed any

22   threat to their safety. Third, while Arias admits to refusing to comply initially with officers' requests to

23   drop her cell phone; this is not the kind of resistance that would warrant being kicked and thrown

24   around. While officers claim that this amount of force was "minimal," a reasonable juror might not

25   agree. Thus, the officers are not entitled to summary judgment on this claim.

26      Defendants maintain that they are entitled to qualified immunity for this conduct. However,

1   under Arias's version of the events, the physical beating would have been clearly unreasonable.

2   Similarly, to the extent that the officers *may have believed* his conduct their constitutional, this too

3   would have been unreasonable assuming the truth of Plaintiff's allegations.

4       Accordingly, the Court DENIES Defendants' Motion for Summary Judgment as to Arias's

5   excessive force claim based upon the use of physical violence.

6               **b.    Excessive Heat.**

7       As to the latter claim, exposure to excessive heat, Arias was confined in the parked patrol vehicle

8   for approximately 30 minutes before she was driven to the jail. Arias Depo. at 91. She admits that she

9   asked Officer Borges to roll down the window, and she did so. *Id*. at 97. As explained above, the Fifth

10  Circuit has held that a post-arrest detention for approximately one-half hour in an unventilated police

11  vehicle in the sun was not in violation of the Fourth Amendment. *Glenn*, 242 F.3d at 314. As was the

12  case with Martinez's allegation regarding exposure to excessive heat in the patrol vehicle, it cannot be

13  said that such a short period of exposure is an "objectively unreasonable" example of excessive force.

14  *Wilkins*, 350 F.3d at 954. Put another way, even viewing the facts in a light most favorable to the Arias,

15  an officer could have reasonably believed that her confinement did not violate the Constitution. *Id. at*

16  954-55.

17      Thus, Defendants are entitled to summary judgment as to Arias's allegation that she was

18  confined to a hot patrol vehicle in a manner that violated her Fourth Amendment rights.

19  **D.    Availability of Punitive Damages**

20      Plaintiffs' constitutional claims allege that Defendants acted "knowingly, willfully, and

21  maliciously, and with reckless and callous disregard for Plaintiffs' federally protected rights." Compl. ¶

22  27. Defendants argue that Plaintiffs' requests for punitive damages lack merit "because the undisputed

23  facts show no officer acted maliciously or with reckless disregard for plaintiffs' rights." Defs.' Mem. at

24  13. Plaintiffs do not present an argument in response. *See* Opposition.

25      Under federal law, a jury may award punitive damages in a § 1983 case alleging excessive use of

26  force either "when a defendant's conduct was driven by evil motive or intent, or when it involves a

reckless or callous indifference to the constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citation and internal quotation marks omitted); *Smith v. Wade*, 461 U.S. 30, 33(1983) (punitive damages may be awarded "if the conduct of one or more of the defendants is shown to be a reckless or callous disregard of, or indifference to, the rights or safety of others."). A section 1983 punitive damages claim is subject to summary adjudication "where plaintiff fails to produce evidence raising a material question of act regarding aggravating circumstances or the reckless or callous nature of defendant's actions." *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1214 (E.D. Cal. 2008) (quoting *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999).

The parties' differing versions of arrests raise factual issues whether the officers involved Deputies engaged in malicious, wanton, or oppressive conduct. Plaintiffs have produced evidence to support their punitive damages claims against officers accused of using excessive force against them to warrant a jury's resolution of factual issues. As such, Defendants have failed to substantiate summary judgment/adjudication on the punitive damages claims.

Thus, this Court DENIES Defendants' motion for summary judgment on the issue of punitive damages.

E.     **Failure to Intercede Claims**

Defendants argue that Officers Borges, Perez, Ferreira and Vera cannot be held liable for failure to intercede because the evidence shows that they were not present during the events at issue in this case. Defs.' Mem. at 14. Plaintiffs do not present an argument in response. *See* Opposition.

"Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 (9th Cir.1994), *rev'd on other grounds*, 518 U.S. 81 (1996); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir.2000). A law enforcement officer who fails to intercede when his fellow officers deprive a victim of his Fourth Amendment right to be free from an excessive use of force would, like his fellow officers, be liable for depriving the victim of his Fourth Amendment rights. *Id.* However, a law enforcement officer may only be held liable for failing to intercede if he had a "realistic opportunity" to

1  do so. *See Cunningham*, 229 F.3d at 1289-90. For example, if officers are not present at the time of a

2  constitutional violation, they have no realistic opportunity to intercede. *Id.* at 1290. In addition, if a

3  constitutional violation occurs too quickly, there may no realistic opportunity to intercede to prevent the

4  violation. *See, e.g., Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1159-60 (N.D. Cal. 2009).

5  According to Vera's declaration, he did not arrive on scene until both Arias and Martinez were in

6  custody. Ex. J. at ¶ 4. He states that he did not interact with either Plaintiff. *Id.* at ¶¶ 5-6. Martinez does

7  not recall speaking with Vera either. Martinez Depo. at ¶94. Vera was mentioned only once in Arias's

8  deposition. When asked if she had interacted with Vera, Arias stated, "No. See, I don't know who was

9  behind me." Arias Depo. at 115. Rule 56 requires the nonmoving party to go beyond the pleadings and

10  by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file,"

11  designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Here

12  Plaintiffs fail to produce any evidence that would allow a reasonable juror to find that Officer Vera had a

13  "realistic opportunity" to intervene in the alleged constitutional violations. Thus, he cannot be liable for

14  failure to intercede.

15  According to Ferreira's declaration, he also did not arrive on scene until both Arias and Martinez

16  were in custody. Ex. K. at ¶ 4. He states that he did not interact with either Plaintiff. *Id.* at ¶¶ 5-6.

17  Martinez does not recall speaking with Vera either. Martinez Depo. at ¶94. With respect to Ferreira,

18  Arias states, "I am not sure if he's the one that slammed my head." Arias Depo. at 114. When asked if

19  she had some reason to believe Ferreira had slammed her head, she responded: "I'm not sure. It was

20  very aggressively, the way they did it." *Id.* She went on to state that she had insufficient opportunity to

21  view a video tape that allegedly documented the events. *Id.* at 115. As is the case with Vera, Plaintiffs

22  fail to produce any evidence that would allow a reasonable juror to find that Officer Ferreira had a

23  "realistic opportunity" to intervene in the alleged constitutional violations. Thus, he also cannot be liable

24  for failure to intercede.

25  As to Perez, Arias alleges that she specifically asked him to witness her conversation with

26  Borges and Borges' refusal to roll down the window of the police car. Arias Depo. at 63-64. Arias

describes that Perez "witnessed everything." *Id.* at 115. Martinez also described that he asked Perez to check on Arias once she was in custody. Martinez Decl. at 94. This is sufficient evidence for a reasonable juror to find that he was in a position to intervene in events surrounding Arias's arrest.[4]

As to Borges, Arias alleges that she removed Arias from the vehicle and searched her. Arias Decl. at ¶ 21. Arias claims that she asked Borges to call an ambulance, but that Borges did not respond to this request. *Id.* Arias also asked Borges to roll the windows down in the patrol vehicle, which Borges refused to do. *Id.*; Arias Decl. at 64. As was the case with Perez, this is sufficient evidence for a reasonable juror to find that she was in a position to intervene in events surrounding Arias's arrest.

For the reasons discussed above, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' Second Cause of Action as to Defendants Vera and Ferreira; and DENIES Defendants' motion as to this claim as to Borges and Perez.

## F.  **Failure to Provide Medical Care**

Defendants state that "Plaintiff's Claims For Failure to Intercede And Denial of Medical Attention Are Unsupported by Any Facts or Evidence" in a heading on page 13 of their Memo. Defendants, however, fail to support this heading with any argument regarding why or how Defendants are entitled to Summary Judgment as to claim. Defs.' Mem. at 13.[5] Arias presented testimonial evidence that she requested, and was denied, medical treatment for injuries. Arias Decl. at 5. Thus, the Court DENIES Defendants' motion for summary judgment as to Plaintiff's Fourth Cause of Action.


## VI. **CONCLUSION AND ORDER**

For the reasons set forth above, Defendants' Motion for Summary Judgment, Doc. 31, is GRANTED IN PART and DENIED IN PART as follows:

The Court GRANTS Defendants' Motion for Summary Judgment, as to Plaintiffs' First Cause of

---

[4] Defendants argue in their reply brief that Perez should be dismissed from this action because he was never served with a complaint; nor was he a CPD officer at the time when the CPD was served with the complaint. Reply at 6. The Court will not address arguments presented for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).
[5] Defendants state in their Reply, "Plaintiffs have failed to prove that Plaintiff Arias required medical attention and have failed to prove that any officers unlawfully denied her medical attention." Reply at 6. Again, this Court will not address arguments presented for the first time in a reply brief. *Zamani*, 491 F.3d at 997.

Action, to the extent that the claims are based on the arrest of Jose Martinez.

The Court DENIES Defendants' Motion for Summary Judgment as to Plaintiffs' First Cause of Action for claims based on the arrest of Elida Arias.

The Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment, as to Plaintiffs' First Cause of Action for claims based on the use of excessive force against both Plaintiffs, as described in more detail in pages 14-21 of this order.

The Court DENIES Defendants' motion for summary judgment on the issue of punitive damages.

The Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' Second Cause of Action as to Officers Vera and Ferreira; and DENIES Defendants' motion as to this claim as to Officers Borges and Perez.

The Court DENIES Defendants' motion for summary judgment as to Plaintiff's Fourth Cause of Action.

IT IS SO ORDERED.

Dated:   **November 21, 2014**         ____**/s/ Lawrence J. O'Neill**____
                                             UNITED STATES DISTRICT JUDGE